NICOLA T. HANNA
United States Attorney
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
JOHN A. BALLA (Cal. Bar No. 295474)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, CA 92501
     Telephone: (951) 276-6246
     Facsimile: (951) 276-6202
     E-mail:    john.balla@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 20-00132-JGB-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S BRIEF IN SUPPPORT OF DETENTION FOR DEFENDANT DIAMOND LUCIOUS |
| v. | |
| DIAMOND LUCIOUS, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John A. Balla, hereby files its brief in support of its request for detention for defendant Diamond Lucious.

    The government's position is based upon the attached memorandum of law, the attached exhibits, the files and records in this case, the Pretrial Services Report prepared in this case, and any other evidence or argument that the Court may wish to consider. The

///
///

government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: July 24, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office

*/s/ John A. Balla*
JOHN A. BALLA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**I.   INTRODUCTION**

Defendant Diamond Lucious is a 21-year-old Five Time Hometown Crip gang member fresh off a 3-year sentence for felony carjacking. He's now charged with being a felon in possession of a ghost gun and ammunition, a violation of 18 U.S.C. § 922(g)(1), after he was involved in an afternoon shooting in the middle of a San Bernardino apartment complex.  Defendant posted two pistols, one with an extended magazine, for sale on social media and brought an AR ghost gun with a loaded high-capacity magazine to meet his co-defendant Trevaugn Moore for the purported sale.  Moore then shot at defendant with a pistol while defendant tried to return fire with the ghost AR. Moore's statement and, more importantly, social media evidence indicate that defendant never intended to sell Moore those illegal guns; instead, he apparently robbed Moore before Moore fired shots to retaliate.  Among other things, defendant's social media accounts showed numerous photos of defendant pointing guns, photos and messages from defendant on both ends of gun sales, and messages in which defendant refers to robbing others.

The nature and circumstances of the charged offense and defendant's history all lead to the conclusion that defendant is actively engaged in violent and dangerous crimes and has no respect for the law.  The Court should detain defendant as a danger to the community and a risk of nonappearance.

**II.  FACTUAL BACKGROUND**

   **A.   The Offense Conduct**

      1.   <u>The Gun Deal</u>

Defendant, as he is wont to do, posted two pistols for sale on his Instagram account:



(Ex. 1 at 2.)[1] His girlfriend, Samyra Cannon, also posted the same photos on social media, and a woman named Tiffany Odom messaged Cannon about buying them. (Ex. 2 at 10-11.) Unbeknownst to Cannon, Odom was brokering the sale for defendant's co-defendant, Trevaugn Moore. (Id. at 9-10.) Odom and Cannon then arranged a time to meet at an apartment complex in San Bernardino. (Id. at 10-11.)

In the mid-afternoon on April 4, 2020, Odom drove into the apartment complex and let Moore into the parking lot from outside. (Id. at 3.) Surveillance footage showed that they waited for a few minutes until defendant and Cannon walked up to Odom's car. (Id.) The four exchanged greetings before Moore entered Odom's driver seat, Cannon entered the front passenger seat, and defendant entered the rear passenger seat while Odom waited outside her car. (Id.) Before

///
///

---

[1] "Blower" is a slang word for a firearm, and "tap in" is slang inviting potential buyers to make offers on an item for sale.

entering the car, Cannon handed defendant a bag containing an AR ghost gun loaded with an high-capacity magazine (Ex. 1 at 3, 4, 8):








Shortly after entering the car, defendant and Cannon began to step out while defendant carried the ghost AR inside the bag. (Id. at 3.) Moore then got out of the front seat, walked toward the rear of the car while retrieving a pistol, and fired shots at defendant. (Id.)

1  Defendant ducked and tried to return fire unsuccessfully.  (Ex. 2 at
2  6.)  He then ran away, leaving his gun behind, as did Cannon and
3  Moore.  (Id.)

4  In a Mirandized interview, Moore said that defendant robbed him
5  with the AR while inside the car.  (Ex. 3 at 5-6.)  Though Moore
6  attempted to falsely minimize his culpability in other ways, Moore's
7  claim about the robbery finds support (1) in the fact that Cannon
8  handed defendant a concealed AR right before the deal (recall that
9  defendant advertised two different pistols for sale, so the AR likely
10 wasn't for sale), and (2) in defendant's social media.

11            2.   Defendant's Instagram Account

12 An ATF agent reviewed data from a search warrant for defendant's
13 Instagram account and found photos and videos tying defendant to the
14 ghost AR and numerous other guns and messages discussing, among other
15 things, illegal gun sales and robberies.  Most notably, he found
16 videos recorded and posted an hour before the shooting in which
17 defendant and co-defendant Christopher Holmes passed the ghost AR
18 between them and flashed Crip gang signs in a car.  (Ex. 1 at 5-9.)



4

Other photos and videos showed that defendant and Holmes both bore tattoos of the classic Milwaukee Brewers ball-in-glove logo, a symbol adopted by the Five Time Hometown Crips criminal street gang. (Id. at 11-12.)

Defendant also posted numerous photos of him displaying other guns (id. at 13-14):








And numerous photos and videos in which he displayed gunshot wounds and bragged about being shot (id. at 15):





5

And sent and received numerous photos of guns for sale (<u>id.</u> at 27):

  

 

  

6

And sent numerous messages about buying guns and selling guns. (Id. at 19-27.)

Defendant also wrote about robbing others (id. at 27-28):

p. 1557/20,705 beginning on January 23, 2020

| LUCIOUS | I tryn rob this nigga from colorado he go stuff going on artilary frfr |
|---|---|

p. 3058/20,705 beginning on March 16, 2020

| LUCIOUS | Might Rob the smoke shop lmao |
|---|---|

p. 3171/20,705 beginning on March 17, 2020

| LUCIOUS | Wat happen let's Rob blood |
|---|---|

p. 3816/20,705 beginning on April 1, 2020

| LUCIOUS | We finna.Rob cuh.For his.money if they say no lol |
|---|---|

And, finally, about committing bank fraud (id. at 22-23):

p. 1755/20,705 beginning on February 9, 2020

| _abeukes909 | Well idk wt u be doooin lol |
|---|---|
| LUCIOUS | Oh okay well cuhz tbh my nigga i just picc up peoples cards and have my older cuzzin jay and his wifey or babysnommas got the bank conecction so the do bank tranfers up to 11k you can do the shit up to 4 times vefor the bank closes your account niggas its barley febuary and i already made 10 bands this year i was doing it last year but I went to jail bc i didnt have no work or nothing so police thought i commited a robbery for having all that cash when i got aressed in 2019 |
| _abeukes909 | Oh wooord whats the catchh thooo |
| LUCIOUS | Wym |
| _abeukes909 | It doesnt mess up your credit bank account dont get shut donw idk whats catch |
| LUCIOUS | We 50/50 everything |

**B. Defendant's Criminal History**

On September 25, 2017, defendant was convicted in the Superior Court of California, County of San Bernardino, of Carjacking in violation of California Penal Code Section 215(a). He was sentenced to 3 years of imprisonment.

**III. ARGUMENT**

Defendant is a danger to the community with no regard for the law. At only 21 years old and coming off a 3-year sentence for Carjacking, defendant posted firearms for sale and brought a loaded AR ghost gun to the sale. His actions led to a shooting in the

middle of an apartment complex during broad daylight.  Further, his social media shows that he revels in the criminal lifestyle.  The Court should detain him as a danger and a risk of nonappearance.

The Bail Reform Act of 1984 directs courts to impose those conditions of pretrial release that "will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(c)(1)(B), and requires detaining a defendant pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e).  Courts consider several factors when determining whether to detain a defendant, including: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

Detention is required where a defendant is either a danger to the community or a risk of nonappearance; the Court need not find both.  United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985); United States v. Kouyoumdjian, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985).  A finding that pretrial release will not ensure the appearance of the defendant need only be supported by a preponderance of the evidence.  Motamedi, 767 F.2d at 1406.  A

finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

**A.  Defendant's release would pose a danger to the community.**

The current charges and defendant's history demonstrate that no conditions could reasonably assure the safety of the community if defendant were released.

The charged offense is serious.  Defendant arranged a clandestine gun deal in an apartment complex in the middle of the afternoon, and he brought a loaded AR ghost gun.  He then purportedly robbed the other party, leading to shots whizzing through the densely populated complex.[2]  Felons with firearms and ammunition pose a significant risk to society, and this case highlights that risk.

Defendant's social media shows that this was not an aberration. He proudly flashes guns and gang signs, he regularly buys and sells firearms, he brags about being shot, he casually discusses robbing other people and businesses, and he steals others' money through bank fraud.  Simply put, defendant is a terror to the community, and he would continue as such if released.

**B.  Defendant's release would pose a significant risk of nonappearance.**

Defendant's criminal history and proud disregard of the law demonstrate that no conditions could reasonably assure defendant's appearance or compliance with the Court's orders.

///

---

[2] Defendant will, of course, dispute that he robbed Moore. Whether or not that's true, he instigated the illegal gun deal and brought an AR loaded with 28 rounds to an apartment complex in the middle of the day.  He created the dangerous situation that put all of the apartment-complex residents at risk.

Defendant committed the instant offense shortly after he received a 3-year sentence for Carjacking in 2017. Receiving such a significant sentence for a serious crime at 18 years old did nothing to deter him from leaving prison and jumping right back into crime. If that sentence didn't deter him from crime, conditions of release wouldn't either.

Further, defendant's social media shows that he proudly flouts the law, and his attitude is incompatible with following conditions of release or appearing for court. Defendant not only commits crimes constantly, but he boasts about his criminal lifestyle to the public. That boasting evinces a particularly bad disrespect for the law, and it demonstrates that he would proudly disregard his release conditions if given the opportunity.

**IV. CONCLUSION**

For the foregoing reasons, the Court should detain defendant.